(33 Misc. Rep. 95.)

### NEWCOMER v. BLANEY et al.

(Supreme Court, Appellate Term. November 27, 1900.)

MASTER AND SERVANT—CONTRACT—TERMINATION—NOTICE.

> Where defendant, a theatrical manager, employed plaintiff as musician for the season, and it was agreed between them that either party might annul the contract at any time during the engagement or rehearsals on giving two weeks' notice to the other, and that, if defendant annulled the contract, he should pay plaintiff's fare back to New York, otherwise plaintiff should pay his own fare, and the fare and expenses of his successor to join the company, *held,* that the contract did not contemplate that defendant should give plaintiff notice of his intention to terminate the season of the company, and therefore he was not liable to plaintiff for his fare to New York and two weeks' wages as damages, where he broke up the company and ended the season without notice.

Appeal from municipal court, borough of Manhattan, Eighth district.

Action by Walter W. Newcomer against Charles E. Blaney and another on a contract for personal services. From a judgment in favor of plaintiff, defendants appeal. Modified.

Argued before BEEKMAN, P. J., and GIEGERICH and O'GORMAN, JJ.

James Foster Milliken, for appellants.

M. Strassman, for respondent.

BEEKMAN, J. The defendants are engaged in the theatrical business, and at the time of the employment by them of the plaintiff had a traveling company in the field, performing a play called "A Boy Wanted," under the management of one Gill, who acted in that capacity for the defendants. On the 24th day of August,

1898, Gill, acting in that behalf, within the scope of his authority, employed the plaintiff as musical director of the company. The employment was by telegram, reading as follows: "Same salary as last season. Join at once. Answer Harrisburg." The plaintiff joined the company accordingly, and continued with it until the 18th day of March, 1899, on which date the company was at Quincy, Ill., and was about going to some other place, when the manager abandoned it, taking with him the box receipts, and leaving the company stranded and helpless. This brought the "season," as it is called, to an end, and apparently no further performances were thereafter given. In order to fully understand the telegram under which the plaintiff was employed, it is necessary to refer to the fact that the plaintiff had been employed by the defendants for the previous season under a written agreement bearing date the 12th day of July, 1897, by which he agreed to render services in a similar capacity in connection with the same play for the season, commencing on or about the 1st day of September, 1897, at a salary of $35 per week. That agreement contained, among others, the following clauses:

"(4) It is mutually agreed that if at any time during this engagement or rehearsals either party desires to annul this contract, it may be so annulled by either party giving to the other two weeks' notice in writing of their, his, or her intention so to do, without assigning any reason or cause therefor."
"(9) If this contract is canceled on two weeks' notice by the first party, he agrees to pay the railroad fare of the party of the second part [the plaintiff] back to New York. If the second party [the plaintiff] give the aforesaid notice, he agrees to pay to the party of the first part the railroad expenses of his successor to join the company, as well as his own expenses back to New York."

It seems to be claimed by the plaintiff that these two clauses, although contained in the contract relating to a prior engagement which has entirely come to an end, are to be regarded as part of the terms of the new employment which arose under the telegram above referred to. He has accordingly brought suit not only for his arrears of salary, but also for his railroad fare back to New York, amounting to $25, and $70 as damages for the failure of the defendants to give him two weeks' notice of the termination of his employment.

Assuming, for the purposes of argument, that the telegram was broad enough to import a re-employment upon the same terms as the old one, we are of the opinion that the construction of the clauses in question contended for by the counsel for the plaintiff and adopted by the trial court is erroneous. It is clear that the parties were contracting with respect to a termination of the contract of employment while the play was in the field, and before the termination of the season. This is obvious upon the very face of the stipulations in question, notably where the plaintiff himself agrees that, if he terminates the contract, he will not only pay his own expenses back to New York, but also the railroad expenses of his successor to join the company. It is therefore perfectly apparent that upon no reasonable construction can the duty of giving two weeks' notice in the case above mentioned refer to notice of the termination of the season. The engagement of the plaintiff was for the

season of the play. When that season was to end was in no way a
matter of stipulation between the parties, and when it ended the
contract of employment terminated by its own terms. It was con-
ceded upon the trial that the season came to an end on the 18th
day of March, 1899, when the company was broken up; and the
question of the defendants' liability to the plaintiff is therefore to
be determined by the measure of their duty towards the latter upon
the normal termination of the contract; and as, upon the termina-
tion of the season, the defendants are under no agreement to give
any previous notice of the same, or to pay the plaintiff his rail-
road fare back to New York, it was error for the trial justice to
award judgment for more than the arrears of salary and interest.
These arrears amounted to $55, upon which the plaintiff was en-
titled to interest from March 18, 1899, to the date of trial, to wit,
the sum of $4.67. The judgment will therefore be modified by re-
ducing the same to, the sum of $74.39, and, as so modified, affirmed,
without costs.

Judgment modified by reducing same to the sum of $74.39, and,
as so modified, affirmed, without costs. All concur.